**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Amanda K. Eldridge, on behalf of** | ) | **CASE NO. 1:08 CV 2713** |
| **herself and all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Cardif Life Insurance Company,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### INTRODUCTION

This matter is before the Court upon plaintiff's Preliminary Motion for Class

Certification (Doc. 50), Motion of Defendant Cardif Life Insurance Company to Exclude the

Expert Report and Testimony of Marcie Belles (Doc. 59), and Defendant Cardif Life Insurance

Company's Motion to File a Sur-Reply in Opposition to Plaintiff's Motion for Class

Certification (Doc. 68).  This dispute centers around the refund of unearned insurance premiums.

For the reasons that follow, plaintiff's motion for class certification is DENIED, defendant's

motion to exclude is DENIED, and defendant's motion for leave to file a sur-reply is

GRANTED.

1

**<u>FACTS</u>**

Plaintiff, Amanda K. Eldridge, brings this class action lawsuit against defendant, Cardif Life Insurance Company, alleging that defendant failed to refund the unearned premium plaintiff paid to defendant for credit insurance.  Plaintiff purchased a Ford Ranger truck from a local car dealer, Donley Ford, under a retail installment sales contract that Donley Ford immediately assigned to Ford Motor Credit Corporation pursuant to a written agreement between Donley Ford and Ford Motor Credit.  At the same time, plaintiff purchased credit insurance from defendant for a single premium of $866.44 that was financed through Ford Motor Credit in the same loan with her truck.  Donley Ford acted as defendant's agent, or producer, in the sale of the insurance policy to plaintiff pursuant to a Producer Agreement between Donley Ford and defendant.

Credit insurance is designed to assure parties financing automobile purchases that payments will continue to be made if the purchaser becomes disabled or dies.  The insurer earns the single premium over the term of the loan.  If the loan terminates early, the insurer will not have earned the entire premium.  The following provision in the policy defendant issued to plaintiff governs refunds of unearned premiums:  "Your insurance coverage stops at the end of the term shown in the application or on the date your loan is paid off, renewed, refinanced, or repossession occurs.  Any premium that may have been paid by you for insurance after the date your insurance stops will be refunded or credited to your account."  The policy contains no express provision requiring the insured to notify the insurer that the loan terminated early or an express provision requiring the insurer to monitor the status of the loan.  The credit insurance contract is a standardized preprinted form contract.  Plaintiff paid off her loan one month prior to

2

the scheduled loan termination date, entitling her to a refund of $2.84.  Plaintiff did not notify

defendant that she paid off her loan.  Plaintiff filed her class action complaint on November 17,

2008.  Defendant issued plaintiff a refund of $3.22 on July 29, 2009 for the unearned premium

plus interest at a statutory rate.

According to plaintiff, defendant has the responsibility to ascertain whether its insureds

have paid their loans in full prior to the scheduled loan termination date, and are thus due a

refund of the unearned insurance premium.  Plaintiff seeks actual damages plus statutory interest

on behalf of the class, punitive damages, and injunctive relief.

Plaintiff asserted three claims in the amended complaint.  In a separate Memorandum of

Opinion and Order (Doc. 35), the Court dismissed count two, which asserted an unjust

enrichment claim.  Count one is a claim for breach of contract for failure to return unearned

insurance premiums upon the early termination of loans.  Count three is a claim for a violation of

the duty of good faith and fair dealing.

Plaintiff moves to certify count one as a class action and defendant opposes plaintiff's

motion.

### STANDARD OF REVIEW

The decision to certify a class action is within the discretion of the district court, but that

discretion must be exercised within the framework set forth in Federal Rule of Civil Procedure

23.  *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100 (1981).  Before certifying a class, the district

court must conduct a rigorous analysis of the Rule 23 prerequisites.  *General Tel. Co. v. Falcon,*

457 U.S. 147, 161 (1982).  The party moving for certification bears the burden of showing that

the requirements for certification are met.  *In re American Medical Sys., Inc.,* 75 F.3d 1069, 1079

(6th Cir. 1996).

Rule 23 sets forth a two-part test for certifying a class action.  First, the four prerequisites

in 23(a) must be met.  Rule 23(a) states the following:

> One or more members of a class may sue or be sued as representative parties on
> behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or
> defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the
> class.

If the threshold requirements of numerosity, commonality, typicality, and adequacy of

representation set forth in Rule 23(a) are met, "parties seeking certification must also show that

the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Products, Inc. v. Windsor,*

521 U.S. 591, 614 (1997).  Plaintiff argues that this action can be maintained under Rule

23(b)(3), which requires a court to find that

> the questions of law or fact common to class members predominate over any
> questions affecting only individual members, and that a class action is superior to
> other available methods for fairly and efficiently adjudicating the controversy.
> The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already
> brought by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims
> in a particular forum; and

4

(D) the likely difficulties in managing a class action.

Plaintiff also seeks certification under Rule 23(b)(2), which requires a court to find that

the party opposing the class has acted or refused to act on grounds that apply
generally to the class, so that final injunctive relief or corresponding declaratory
relief is appropriate respecting the class as a whole[.]

Decisions on class certification should not be conditioned on the merits of the case.  A court may, however, go beyond the pleadings to the extent necessary "to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. American Tobacco Co.,* 84 F.3d 734, 744 (5th Cir. 1996) (citing *Falcon,* 457 U.S. at 160, and Manual for Complex Litigation § 30.11 at 214 (3d ed. 1995)).

### ANALYSIS

**A.      Motion for Leave to File Sur-Reply**

Defendant moves for leave to file a sur-reply to address plaintiff's arguments relating to an affidavit and its exhibits that plaintiff submitted with her reply brief.  This Court grants leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply.  *Elliot Co. v. Liberty Mutual Ins. Co.,* 239 F.R.D. 479 (N.D. Ohio 2006).  *See also Aslani v. Sparrow Health Systems,* 2009 WL 3711602 (W.D. Mich. Nov. 3, 2009) (citations omitted) ("Sur-replies are permitted only in rare cases where a movant improperly raises new arguments in a reply.").  The Court finds that plaintiff's reply in this case did raise new arguments, and defendant's proposed sur-reply is limited to addressing only those new arguments.  Accordingly, defendant's motion for leave to file a sur-reply is granted.

**B.      Numerosity**

5

Plaintiff seeks certification of the following multi-state class:

All individuals during the applicable time period: (a) who are residents of the
United States and (b) who have been or will be insured under a Cardif credit
insurance policy, and (c) whose underlying loan stopped or could stop prior to the
expiration of the term of the indebtedness, and (d) who were not paid or might not
be paid a refund of unearned premium.

Plaintiff excludes from the class the following states because defendant has not sold its insurance
products in these states:  Alaska, California, Colorado, Delaware, Hawaii, Maine, Maryland,
Montana, Nebraska, New Hampshire, New Jersey, New York, North Dakota, Oregon, South
Dakota, Vermont, Washington, West Virginia, and Wyoming.  Plaintiff also excludes the District
of Columbia.  Plaintiff further excludes any insurance contract containing an express notice
provision that began appearing in some states in 2006.  Defendant does not object to the
definition of the class.

To prove numerosity, plaintiff must

demonstrate that the putative class is "so numerous that joinder of all members is
impracticable." Fed. R. Civ. P. 23(a)(1).  We have observed that there is no strict
numerical test for determining impracticability of joinder.  Indeed, the numerosity
requirement requires examination of the specific facts of each case and imposes
no absolute limitations.  Nevertheless, while the exact number of class members
need not be pleaded or proved, impracticability of joinder must be positively
shown, and cannot be speculative.

*Golden v. City of Columbus,* 404 F.3d 950, 965-66 (6th Cir. 2005) (internal citations omitted).
"When class size reaches substantial proportions, however, the impracticability requirement is
usually satisfied by the numbers alone."  *In re American Medical Systems, Inc.,* 75 F.3d 1069,
1079 (6th Cir. 1996).

6

Plaintiff offers Marcie Belles' expert report and opinion testimony to support her claim that the class is too numerous for joinder.[1]  Belles opines that at least 65% of all auto loans are paid off early.  Belles further states that according to the information provided to her, defendant issued 331,606 policies between 1999 and May 29, 2009, and thus should have correspondingly refunded unearned premiums on 216,000, or 65%, of those policies.  According to a premium listing relied on by Belles, defendant has only refunded unearned premiums on 84,660 of those policies.

Defendant argues that Belles' testimony is not relevant in determining whether plaintiff has met the numerosity requirement because it focuses only on the industry average of auto loan early terminations and not on the number of defendant's insureds who purchased credit insurance with their auto loans, paid off their loans early, and are owed a refund of unearned premiums.  In connection with this argument, defendant cites portions of Belles' deposition in which she states that she does not know whether loans with credit insurance prepay at the same rate as auto loans in general, nor does she know anything about defendant's company, plaintiff's loan, the demographics or geographic boundaries of the putative class, or the frequency with which members of the putative class prepay.

Defendant also argues that Belles' testimony is unreliable because it is based on an unreliable methodology and on irrelevant information.  Defendant cites portions of Belles' deposition testimony in which she states that to gather the information for her expert report, she contacted about five unnamed executives at unidentified large auto finance companies and asked

---

[1]     Defendant has moved the Court to exclude Belles' expert report and opinion testimony from its analysis of the Rule 23(a) requirements.  Defendant's motion is denied.

7

them whether the average prepayment rate of their auto loans was closer to 15 percent or 50

percent.[2]  The responses she received ranged from 15 to 91 percent and were not exact or

verified.[3]  She did not obtain supporting documentation or keep records of the conversations she

_____

[2]      Although Belles states in her report that she reviewed a number of documents in
connection with preparing her report, she states that the 65% figure was obtained from her
conversations with the executives at the auto finance companies:

> Q.  So, the 65 percent figure that appears in the last paragraph of your expert
> report, is that number the results of this, for lack of a better term, informal
> survey among these five industry executives?
>
> A.  I guess generally speaking, yes.
>
> Q.  Is there some other data that you used to arrive at that percentage beyond
> the data that you obtained from these five individuals?
>
> A.  Information that I have gleaned from other lenders outside of that specific
> request.  Just, you know, in reporting on auto finance every once in awhile you
> come across a statistic or you are talking to a lender and the lender will say
> something about loan prepayments.  You know, kind of factoring that
> information into it.
>
> Q.  Is there a way that you can explain how you mathematically factored that
> information that you have come across in your career into the calculation to
> determine– to reach the 65 percent number in your report?
>
> A.  No.  I suppose that 65 percent number is really, you know, from those
> conversations.

(Belles Deposition Tr. 35:12-36:8.).

[3]      Belles testified to the following with respect to question she asked and the
responses she received:

> Q.  Okay.  What specifically did you ask these individuals?
>
> A.  I had asked them what the percentage was of their portfolios that
> prepaid, paid off before the loan term expired.  And in the emails
> specifically it had said, you know, was it closer to 15 percent or 50
> percent?  So some chose just to answer that question, was it closer to 15 or
> 50, while others said this is our specific prepayment information.

8

had with these individuals.  Additionally, she is unaware whether the loan portfolios of the

companies that she contacted contain loans that included the purchase of credit insurance.

Defendant also points out that the statistics Belles gathered from the auto finance companies

relate to a percentage of the total volume of portfolio dollars, and not to a *number* of auto loans.[4]

The Court must engage in a rigorous analysis when evaluating the plaintiff's proof of

numerosity.  *Golden,* 404 F.3d at 966.  Upon review, the Court finds that plaintiff has not shown

that the putative class is so numerous as to make joinder impracticable.  Belles' expert testimony

and opinion evidence is unpersuasive.[5]  Reference to five unidentified auto finance companies'

unverified percentage of total automobile loan portfolio dollars that are typically prepaid is not

probative of the number of defendant's insureds who are owed refunds.  Belles does not explain

how that percentage translates into a number of prepaid automobile loans with which credit

insurance was purchased, and admits that she has no knowledge as to whether automobile loans

---

(Belles Depo. Tr. 29:7-15.).

[4]        Specifically, Belles testified:

> Q. Was it your understanding that they were providing you with a percentage of the number of loans that prepaid or the volume of dollars that were prepaid?
>
> A.  My understanding was the dollar amount.  Usually when lenders talk about their portfolios, they talk about dollar amounts.  If they're talking about numbers, they would specifically say, you know, by number of loans.

(Belles Depo. Tr. 29:25-30:8.).

[5]        Plaintiff states that Belles testified similarly in *Hansen v. Monumental Life Ins. Co.,* No. 05-cv-1905 (D. Conn. March 6, 2008) and the court in that case granted class certification using the 65% early loan payoff figure to determine that numerosity was easily met and that perhaps as many as 11,736 loans were terminated early without a refund.  In that case, however, the court devoted no specific analysis to Belles' testimony as plaintiff also offered other evidence supporting numerosity.

in general prepay at the same rate as automobile loans with credit insurance.  Belles' opinion is thus even more speculative than the evidence offered by the plaintiff in *Golden.  Id.* at 966 (plaintiff did not prove numerosity where she offered the total number of tenants in the city as proof that joinder was impracticable where the putative class consisted of tenants whose water service was terminated because of the landlord's or prior tenant's indebtedness).[6]

Plaintiff also argues that defendant's practice of reserving a certain percentage for refunds of unearned premiums and requiring auto dealers through whom it sells insurance to reserve for refunds of earned premiums proves that defendant knows it will be liable for future refunds.  Defendant's liability for unearned premiums as a whole, however, is not at issue in determining numerosity.  Moreover, defendant's president has submitted an affidavit that states defendant's reserves are set according to state law, and not based on the likelihood that insureds will terminate their loans early.

Plaintiff further argues that other similar class actions against credit insurers support numerosity because "[t]here is no basis to conclude that Cardif is different from other credit insurers as to whom courts have held that the numerosity requirement has been met."  Such a statement, however, is speculative and does not positively show that the class is so numerous that joinder is impracticable.  *Id.* at 965.  Moreover, the cases plaintiff cites do not involve a court holding that the numerosity requirement has been met under the circumstances here.  The cases plaintiff cites in support of this statement include several Assurances of Voluntary

---

[6]     Plaintiff also offered Exhibit 14, purportedly an auto finance study and an article on credit insurance, to support the conclusion that 65% of automobile loans are paid off early.  The Court, however, was unable to ascertain a 65% figure from the references or exhibits provided by plaintiff, which appear to be the same documents upon which the expert relied, as indicated in the copy of the expert report that defendant provided in support of its motion to exclude.

Compliance between the Texas Attorney General and other insurance companies involving refunds of unearned premiums.  Those agreements are essentially settlement agreements between the Texas Attorney General and the various insurance companies, in which the Texas Attorney General sets forth a number of recitals[7] to which it acknowledges the insurance companies do not admit and states that the companies have agreed to compromise to avoid litigation.  Plaintiff also cites to *Perkins v. American Nat'l Life Ins. Co.,* No. 3:05-CV-100 (M.D. Ga. Jan. 14, 2009), a settlement agreement in which the court found numerosity "for settlement purposes only" and without any analysis.  Finally, plaintiff cites to *Parker v. Life Investors,* No. SU-04-CV-3687-6 (Ga. Sup. Ct. Feb. 14, 2008), which is a letter from the defendant insurance company to the judge in the case admitting that numerosity exists.

Cases involving other insurance companies do not relieve plaintiff of her burden to positively show that the class in *this case* is too numerous for joinder.  Plaintiff's assertion that the Court has no basis to conclude that defendant is different from any other insurance company is an attempt to shift the burden to defendant to show that it is different from the other companies, when in fact it is *plaintiff's burden* to show numerosity.  Plaintiff was given ample opportunity through discovery on class certification issues to gather evidence to establish numerosity.  Although plaintiff complains in her brief that defendant's representative refused to answer several questions directly related to numerosity in his deposition, she failed to file a motion to compel.

---

[7]    The recitals include numbers of persons whose loans terminated early and had not been refunded unearned premiums, as the Texas Attorney General determined by comparing data provided by the insurance company and lenders.

11

Finally, plaintiff argues that "when the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Olden v. LaFarge Corp.,* 203 F.R.D. 254, 269 (E.D. Mich. 2004), *aff'd,* 383 F.3d 495 (6th Cir. 2004).  In that case, involving pollution and a nuisance claim, plaintiff provided as evidence of numerosity a petition with 200 signatures of people interested in pursuing the class action, and the putative class was an entire city.  Here, plaintiff has not positively shown that there is even one other person to whom defendant owes a refund.  Numerosity cannot be established by "general knowledge and common sense" without first engaging in the "rigorous analysis" required by the Supreme Court.  *General Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982).  Accordingly, plaintiff's motion for class certification is denied.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Class Certification is DENIED, Motion of Defendant Cardif Life Insurance Company to Exclude the Expert Report and Testimony of Marcie Belles is DENIED, and defendant's Motion to File a Sur-Reply in Opposition to Plaintiff's Motion for Class Certification is GRANTED.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 2/9/10

12